**FIRST NATIONAL BANK OF LOUISVILLE, Plaintiff,**

v.

**John W. BEZEMA, Defendant.**

**No. NA 82–234–C.**

United States District Court,
S.D. Indiana,
New Albany Division.

Aug. 31, 1983.

L. Tyler Spies, New Albany, Ind., for plaintiff.

No appearance for defendant.

DILLIN, Chief Judge.

### ENTRY

This case comes before the Court on plaintiff's motion to enter a default judgment against defendant. For the reasons stated below, plaintiff's motion is denied. This case is ordered transferred to the United States District Court for the District of Massachusetts.

#### *Background*

On October 8, 1976 defendant Bezema, a Massachusetts resident, while in Indiana signed an installment contract to secure payment of the price of a Cessna airplane which he had agreed to purchase from Jack L. Rhoades Aircraft Sales, Inc. of Seymour, Indiana. Bezema then returned to Massachusetts with the airplane. There is no indication that Bezema entered this state for any other purpose than to consummate this purchase. Neither is there any indication of any prior or subsequent contacts between Bezema and the State of Indiana.

At some later date, Bezema became unable to meet his obligations under the installment contract. The airplane was seized and resold. Plaintiff, as assignee of the installment contract, has brought this action to recover a deficiency due it after the resale.

Bezema was served in Massachusetts with notice of this action. Plaintiff maintains that Bezema's conduct while in Indiana falls within the ambit of Indiana Trial Rule 4.4(A) which states:

> Any person or organization that is a nonresident of this state . . . submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:
>
> (1) Doing any business in this state;
>
> . . . .

Bezema failed to answer or otherwise respond to plaintiff's complaint. Plaintiff is now seeking entry of a default judgment.

■ Although Bezema has not moved to dismiss for want of personal jurisdiction, the Court, *sua sponte,* now raises that issue. Bezema has so far done nothing which could be construed as a waiver of any jurisdictional objection which he might have. See Rule 12(h)(1), F.R.Civ.P. Furthermore, the rule that a court may not *sua sponte* dismiss for lack of personal jurisdiction does not apply where a defendant has not entered an appearance by filing a motion or otherwise. *Cf. Zelson v. Thomforde,* 412 F.2d 56, 58 (3rd Cir.1969).

#### *Discussion*

■ The Indiana long-arm statute was intended to extend personal jurisdiction of courts sitting in this state, including federal courts in diversity cases, to the limits permitted under the due process clause of the Fourteenth Amendment. *Valdez v. Ford, Bacon and Davis, Texas, Inc.,* 62 F.R.D. 7, 14 (N.D.Ind.1974); *Oddi v. Mariner-Denver, Inc.,* 461 F.Supp. 306 (S.D.Ind.1978); *Suyemasa v. Myers,* 420 N.E.2d 1334 (Ind.App. 1981). The traditional two step approach of testing jurisdiction against first statutory and then constitutional standards is therefore collapsed into the single inquiry of whether jurisdiction offends constitutional due process.

■ Due process requires that in order to subject a nonresident defendant to the jurisdiction of the forum's court, the defendant must have certain minimum contacts with

the forum such that maintenance of the suit does not offend the traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ One function of the concept of minimum contacts is to protect the defendant against the burdens of litigating in a distant or inconvenient forum. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The burden on the defendant must always be of primary concern. *Id.,* 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498.

■ There can be little doubt that defendant would be severely burdened by the expense of defending this action in Indiana. The lawsuit appears to have been occasioned in the first place by defendant's inability to meet monthly payments on the airplane. Defendant's paucity of financial resources may have prevented him from voicing any defense he might have, thus insuring plaintiff's success in this forum.

We are mindful of plaintiff's interest in obtaining convenient and effective relief. *See Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978). However, this interest would not be prejudiced if plaintiff were required to sue in Massachusetts instead of Indiana. The increased cost of bringing the action in Massachusetts would not be significant for plaintiff, a large bank. Furthermore, because plaintiff's case is based entirely on documentary evidence which appears determinative of all relevant factual issues, this case may well be disposed of by way of summary judgment, thus avoiding the expense of presenting witnesses in a distant forum. In short, the relief that plaintiff could have obtained by instituting this suit in Massachusetts would be no less effective and conveniently obtained than that which it anticipated by filing the suit in Indiana.

In some instances, the forum state has an interest in adjudicating the dispute. *See, e.g., McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). The forum state's interest then becomes a factor to be balanced against the defendant's burden of defending in the distant state. The present case, however, does not include that complication. Indiana has only a weak interest, if it has any interest at all, in protecting a Kentucky corporation from nonpayment of installments by a Massachusetts obligor.[1]

The State of Indiana does, however, have a clear and compelling interest in *not* exercising jurisdiction over defendant. One need only briefly consider the adverse effect on the economy of this state if every tourist, transient or casual consumer making a credit purchase in Indiana could be haled back into the courts of this state on a complaint by the seller. The risk of being required to return here to defend an action would undoubtedly deter many consumer transactions. Any short term benefit to the seller gauged by the convenience of suing in Indiana would be vastly outweighed by the deleterious effects of a policy that ultimately deters consumer credit sales.

For this reason, individuals or corporations purchasing goods on a commercial scale must be viewed, for jurisdictional purposes, differently than consumers. The substantive policies which are furthered by this distinction do not conflict with the criteria recognized by the United States Supreme Court as relevant to the jurisdictional analysis. See *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498.

The same resources which permit for-profit entities to seize the bargains of distant markets allow them to defend effectively when their suppliers file suit in the state where the transaction centered. By the same token, the relative inconvenience of having to defend in the distant forum is

---

1. Events occurring after the conduct upon which the statute predicates jurisdiction may be taken into consideration. *Waukesha Bldg.*

*Corp. v. Jameson,* 246 F.Supp. 183 (D.C.Ark. 1965).

much less for the commercial entity than for the individual consumer.

Commercial transactions often entail a degree of complexity that renders disputes between the parties much more likely than in consumer transactions. Mindful of this, commercial entities pursue their economic aims with a greater sense of where their conduct will or will not render them liable to suit. Thus, when employed in a commercial context, the phrase "purposeful availment of the privilege of conducting activities within the forum state," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283, 1298 (1958), assumes a relevancy which is absent when applied to consumer transactions.

It is often repeated in decisions on the issue of personal jurisdiction that no hard and fast rule as to what constitutes minimum contacts may be laid down. *See, e.g., Oddi v. Mariner-Denver, Inc.,* 461 F.Supp. 306, 308 (S.D.Ind.1978). We do not wish to imply by our remarks that a consumer will never satisfy the test of minimum contacts for the lawful exercise of long-arm jurisdiction. However, the circumstances in which minimum contacts may be found in consumer cases will, in our opinion, be very rare. Certainly, the present case does not present these unusual circumstances.

We find, therefore, that this Court has no jurisdiction over defendant. Title 28 U.S.C. § 1404(a) authorizes a district court in the interest of justice to "transfer any civil action to any other district or division where it might have been brought." We therefore order this case transferred forthwith to the Clerk of the United States District Court for the District of Massachusetts, Post Office and Courthouse Building, Boston, Massachusetts, 02109.